IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BLANCA PEAK RESOURCES, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:20-CV-0141-D |
| VS. | § | |
| | § | |
| BIG STAR ENERGY LIMITED, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this action removed based on diversity of citizenship, plaintiff's motion to remand presents the questions whether the removing defendant should be deemed a Texas citizen based on the citizenship of its wholly-owned Texas subsidiary, and thus precluded as an in-state defendant from removing the case, and whether defendant contractually waived the right of removal by agreeing that the parties' agreement shall be governed by Texas law and that the forum for any pertinent disputes "is Dallas County, Texas." For the reasons that follow, the court holds that the removing defendant should not be deemed a Texas citizen and that the defendant did not contractually waive its right of removal. The court therefore denies the motion to remand.

I

This is an action by plaintiff Blanca Peak Resources, LLC ("Blanca Peak") against defendant Big Star Energy Limited ("Big Star"), alleging claims under Texas law for trade secret misappropriation, breach of contract, and violation of the Texas Theft Liability Act,

Tex. Civ. Prac. & Rem. Code Ann. §§ 134.001-.005 (West 2019). Blanca Peak filed the lawsuit in Texas state court in Dallas County, Texas. Big Star removed the case to this court based on diversity of citizenship. It alleges that Blanca Peak is a citizen of Colorado and Oklahoma based on the citizenship of its members,[1] and that Big Star is a citizen of Australia because it is an Australian corporation with its principal place of business located in Australia.

Blanca Peak is in the oil and gas exploration and production business. Through a related entity, it has recently researched the location and availability of oil, gas, and helium prospects in several states, including Texas. Big Star is also in the oil and gas exploration and production business and operates an office located in Subiaco, Western Australia.

Before June 2018 Big Star's name was Antares Energy Limited ("Antares Limited"). Antares Limited focused its mineral production operations in the United States, including Texas. In 2004 Big Star, operating as Antares Limited, created a subsidiary named Antares Energy Company ("Antares Company"). Antares Company is a Delaware Corporation that maintains its principal place of business in Texas.

When Big Star changed its name from "Antares Energy Limited" to "Big Star Energy

---

[1] In its first amended notice of removal, Big Star asserts that Blanca Peak is a Wyoming citizen. 1st Am. Notice of Removal at 3. Considering Big Star's allegation that Blanca Peak's members are citizens of Colorado and Oklahoma, this assertion is doubtful. *See Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008) ("All federal appellate courts that have addressed the issue have reached the same conclusion: like limited partnerships and other unincorporated associations or entities, the citizenship of a LLC is determined by the citizenship of all of its members."). But even if Blanca Peak should also be deemed a citizen of Wyoming, such citizenship would be diverse to a citizen of Australia.

Limited," it continued its operations in Texas under its subsidiary, "Antares Energy Company."

Big Star's "Big Star Project' is located in Midland Basin, Texas. In 2018 Big Star confirmed in its second quarter report, among other announcements concerning its "Big Star Project," that Antares Company is its U.S. subsidiary. It stated that its in-country team had been established with a veteran of the U.S. oil industry who was appointed as director of Big Star's U.S. subsidiary (Antares Company) overseeing the company's Big Star Project in Texas.

In December 2018 Blanca Peak and Big Star entered into a Confidentiality Agreement ("Agreement") in connection with their negotiations regarding certain U.S. prospect sites identified by Blanca Peak's research. The Agreement provides, in pertinent part: "[t]his Agreement shall be governed by and construed in accordance with the laws of the state of Texas without regard to conflicts of law principles otherwise applicable to such disputes and the forum for the litigation of any such dispute is Dallas County, Texas." P. App. Ex. 2 at ¶ 11.[2]

In 2019 Blanca Peak filed this lawsuit against Big Star in Texas state court in Dallas County, Texas. Big Star removed the case based on diversity of citizenship. Blanca Peak now moves to remand on two grounds: First, under 28 U.S.C. § 1441(b)(2), Big Star is

---

[2]Blanca Peak's appendix does not comply with the requirements of N.D. Tex. Civ. R. 7.1(i)(4), which requires that each page of an appendix be sequentially numbered. Accordingly, the court cites the appendix by the exhibit number designation.

precluded from removing this case because its wholly-owned subsidiary—Antares Company—is a citizen of Texas,[3] and the close relationship between Big Star (the parent company) and Antares Company (its subsidiary) justifies the finding that Big Star is a citizen of Texas. Second, in the Agreement, Big Star waived its right of removal by agreeing that the Agreement shall be governed by and construed in accordance with the laws of the state of Texas and that litigation of any such dispute shall be in Dallas County, Texas. Big Star opposes the motion to remand.

II

As the removing party, Big Star "has the burden of overcoming an initial presumption against jurisdiction and establishing that removal is proper." *Carnes v. Data Return, LLC*, 2005 WL 265167, at *1 (N.D. Tex. Feb. 1, 2005) (Fitzwater, J.) (citing *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001)). For a case to be removed based on diversity jurisdiction, "all persons on one side of the controversy [must] be citizens of different states than all persons on the other side." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008) (quoting *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004)). Pertinent here, under 28 U.S.C. § 1441(b)(2),[4] a case cannot be removed based on diversity

---

[3]Because Antares Company maintains its principal place of business in Texas, it is a citizen of Texas. *Ill. Cent. Gulf R. Co. v. Pargas, Inc.*, 706 F.2d 633, 637 (5th Cir. 1983) (holding that a corporation is considered to be a citizen both of its state of incorporation and of its principal place of business).

[4]28 U.S.C. § 1441(b)(2) provides: "[a] civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which

jurisdiction if any properly joined defendant is a citizen of the state in which the action is brought (here, Texas).

### III

Blanca Peak maintains, first, that Big Star is precluded from removing this case under 28 U.S.C. § 1441(b)(2) because its wholly-owned subsidiary (Antares Company) is a citizen of Texas, and the close relationship between Big Star (the parent company) and Antares Company (its subsidiary) justifies the finding that Big Star is a citizen of Texas.

### A

Relying on *Hargave v. Fibreboard Corp.*, 710 F.2d 1154 (5th Cir. 1983), Blanca Peak contends that a close relationship between a parent and its subsidiary may justify a finding that the parent does business in a jurisdiction through the local activities of its subsidiaries.[5] Blanca Peak first recognizes the determining factors that the *Hargrave* court relied on to find that the parent company was not subject to jurisdiction. It then argues that, despite the absence of discovery (which the court will address below), which has precluded Blanca Peak from discovering and providing evidence such as asset commingling, joint bank accounts,

---

such action is brought."

[5]Blanca Peak's reliance on *Hargrave* is somewhat misplaced. In *Hargrave* the court addressed whether the "close relationship" between a parent and its subsidiary justified a finding that the parent corporation did business in a state such that the court could exercise *personal jurisdiction* over the parent corporation. *See Hargrave*, 710 F.2d at 1159. At issue here is whether removal is proper under 28 U.S.C. § 1441(b)(2), which relates to whether the case is removable. Regardless, even if the court applies the factors articulated in *Hargrave* to determine whether Blanca Peak has established that Antares Company is Big Star's alter ego, it would still find that Blanca Peak has failed to meet its burden. *See infra* § III(D).

and joint payroll accounts, the evidence shows that the board of directors for Antares Company consists of Ross Warner, Michael Pollack, and Joanne Kendrick; that they make up three of the four current board members of Big Star; that Antares Company is not engaged in an unrelated field or a specialized offshoot; that the two companies are for all intents and purposes the exact same types of companies engaged in the exact same types of business; that, unlike the entities in *Hargrave*, these companies did not later become associated merely by technicality; and that Big Star created Antares Company specifically to operate within Texas in the same manner that Big Star would otherwise operate. In its reply, Blanca Peak relies on the court's obligation to strictly construe the removal statutes in favor of remand and the evidence of an alter ego relationship between Big Star and Antares Company.

B

It is well established that a "subsidiary corporation which is incorporated as a separate entity from its parent corporation is considered to have its own principal place of business." *Burnside v. Sanders Assocs., Inc.*, 507 F. Supp. 165, 166 (N.D. Tex. 1980) (Hill, J.) (citation omitted), *aff'd*, 643 F.2d 389 (5th Cir. Unit A Mar. 1981). The citizenship of a subsidiary may be imputed to its parent corporation, however, when the subsidiary is not truly operating as a separate entity but is, instead, the alter ego of the parent corporation. *See Bennett v. Steak 'N Shake Operations, Inc.*, 2010 WL 2400160, at *1 (N.D. Tex. June 14, 2010) (Lynn, J.) ("The citizenship of a parent corporation may be imputed to its subsidiary when the latter is not truly operating as a separate entity."). "Whether a subsidiary is a separate entity is a question of fact." *Id.* (citing *Burnside*, 507 F. Supp. at 166). To determine whether a

subsidiary is the alter ego of its parent company, courts consider such matters as "the degree of control exercised by the parent, the relationship between parent and subsidiary activities, the membership of the Board of Directors, and the maintenance of separate corporate books." *Burnside*, 507 F. Supp. at 166; *see also Bennett*, 2010 WL 2400160, at *1.

C

Although Big Star, as the removing party, bears the ultimate burden of establishing the court's jurisdiction, Blanca Peak must prove that Big Star is not a separate entity from its subsidiary. *See Bennett*, 2010 WL 2400160, at *1. In its opening and reply briefs, Blanca Peak seemingly relies on the absence of discovery to excuse its failure to offer necessary supporting proof. *See* P. Br. 7 ("Due to the fact that no discovery has yet been permitted, Plaintiff has not been given the opportunity to discover and provide evidence of asset com[m]ingling, joint bank and payroll accounts, etc."); P. Reply Br. 2 ("As Plaintiff argued, despite having no ability to engage in discovery with Defendant on this topic, Plaintiff established in its Motion and within Defendant's own records (attached to Plaintiff's Motion) that several of these factors have clearly been satisfied."). But Blanca Peak has never moved for leave to conduct discovery, despite the fact that jurisdictional discovery is available and has been granted by this court when requested. *See, e.g., Valtech Sols., Inc. v. Davenport*, 2016 WL 2958927, at *2 (N.D. Tex. May 23, 2016) (Fitzwater, J.) (granting leave to conduct jurisdictional discovery). Accordingly, Blanca Peak cannot rely on the absence of jurisdictional discovery to excuse its failure to satisfy the burden of proving that Antares Company's citizenship should be imputed to Big Star.

D

Blanca Peak has failed to prove that Antares Company is the alter ego of Big Star.

Blanca Peak relies on evidence that the board of directors for Antares Company constitute three of the four current board members of Big Star; that Antares Company and Big Star are engaged in related fields; that the two companies are essentially the exact same types of companies engaged in the exact same types of business; that the companies did not later become associated merely by technicality; and that Big Star created Antares Company specifically to operate within Texas in the same manner that Big Star would otherwise operate. In its reply brief, Blanca Peak relies on evidence that Big Star grouped together the profit and loss of Big Star and its controlled entities and implied that its assets and the assets of Antares Company are one and the same.

This evidence is insufficient to establish that Antares Company is not truly operating as a separate entity but is, instead, the alter ego of Big Star. Although there is substantial overlap in the two companies' boards of directors, and Big Star, the parent company, created Antares, its wholly-owned subsidiary, these facts alone does not prove that Antares Company is the alter ego of Big Star. Blanca Peak has not offered any evidence that the companies' assets are actually jointly held or commingled,[6] that the companies do not maintain separate corporate records and observe other corporate formalities, or that the companies are not actually operating as two separate legal entities. *Cf. Nauru Phosphate Royalties, Inc. v.*

---

[6]The cited references in Big Star's corporate filings to the assets of Antares Company are insufficient to establish that the assets of the two companies are actually jointly held.

- 8 -

*Drago Daic Interests, Inc.*, 138 F.3d 160, 164 (5th Cir. 1998) (noting that "[t]his court has attributed a subsidiary's citizenship to its parent company in *alter ego* situations where the subsidiary's wrongful conduct is at issue," but holding that "[t]here is no evidence that the corporate form of Nauru's subsidiaries should be disregarded and the subsidiaries treated as *alter egos* of Nauru."); *Petty v. Venable, Baetjer, Howard & Civiletti, LLP*, 2002 WL 31875567, at *5 (N.D. Tex. Dec. 6, 2002) (Kaplan, J.) ("[T]he activities of affiliated corporations cannot be imputed to [defendant] for diversity purposes [where] plaintiffs do not allege, much less prove, that [affiliated corporations] are the *alter egos* of [defendant]."), *rec. adopted*, 2002 WL 31875567, at *1 (N.D. Tex. Dec. 18, 2002) (Fitzwater, J.). Blanca Peak is relying on a handful of facts to draw the inference that Big Star and Antares Company are alter egos. But it has failed to adduce evidence on myriad other facts (asset commingling, joint bank accounts, and joint payroll accounts) that Blanca Peak itself recognizes as bearing on this question. And it certainly has not addressed many of the factors deemed significant in *Hargrave*. *See Hargrave*, 710 F.2d at 1160 (holding that alter ego was not established where corporations maintained separate corporate headquarters, shared no common officers, scrupulously observed corporate formalities, maintained separate bank accounts, accounting and payroll systems, insurance contracts, budgets, and financial records, filed separate tax returns, and did not commingle any corporate assets).

Accordingly, the court denies Blanca Peak's motion to remand to the extent based on the premise that Antares Company's Texas citizenship should be imputed to Big Star.

IV

Blanca Peak maintains next that Big Star waived its right of removal.

A

Blanca Peak contends that Big Star waived its right of removal by clearly indicating that the Agreement "shall be governed by Texas law" and that "litigation of any dispute arising from the Agreement shall be in Dallas County, Texas," P. Br. 8; that the language in the Agreement is "extremely similar" to the forum selection clause in *ENSCO International, Inc. v. Certain Underwriters at Lloyd's*, 579 F.3d 442 (5th Cir. 2009) (affirming order of remand where contract stated "[a]ny disputes arising under or in connection with it shall be subject to the exclusive jurisdiction of the Courts of Dallas County, Texas,"), which the Fifth Circuit held clearly demonstrated the parties' intent to make Texas the exclusive jurisdiction; that there is no question that the wording in the Agreement sufficiently reflects the parties' intent for the Agreement to be governed by Texas law and that disputes be resolved in the courts of Dallas County, Texas; and that due to the fact that the language in the Agreement is more than reasonably clear in identifying Dallas County, Texas courts as the proper venue, and given the support of case law in determining that such language further indicates the state courts of that county or city, and not federal, Big Star is estopped from removing this case.

B

"For a contractual clause to prevent a party from exercising its right to removal, the clause must give a 'clear and unequivocal' waiver of that right." *City of New Orleans v. Mun. Admin. Servs., Inc.*, 376 F.3d 501, 504 (5th Cir. 2004) (citing *McDermott Int'l, Inc. v.*

*Lloyd's Underwriters of London*, 944 F.2d 1199, 1212-13 (5th Cir. 1991); *Waters v. Browning-Ferris Indus., Inc.*, 252 F.3d 796, 797 (5th Cir. 2001)). "Ambiguous language cannot constitute a 'clear and unequivocal' waiver." *Grand View PV Solar Two, LLC v. Helix Elec., Inc.*, 847 F.3d 255, 258 (5th Cir. 2017) (quoting *City of New Orleans*, 376 F.3d at 505-06). "A party may waive its right[] [to removal] by explicitly stating that it is doing so, by allowing the other party the right to choose venue, or by establishing an exclusive venue within the contract." *City of New Orleans*, 376 F.3d at 504. Blanca Peak focuses only on the third of these options, arguing that the Agreement "sufficiently reflects the Parties' intent . . . that disputes be resolved in the courts of Dallas County." P. Br. 10.

C

The Agreement provides, in pertinent part: "[t]his Agreement shall be governed by and construed in accordance with the laws of the state of Texas without regard to conflicts of law principles otherwise applicable to such disputes *and the forum for the litigation of any such dispute is Dallas County, Texas*." P. App. Ex. 2 at ¶ 11 (emphasis added). Although this language establishes that the forum for litigation of any pertinent dispute is Dallas County, Texas, it does not specify a particular court in Dallas County as the exclusive forum, and it does not imply state rather than federal jurisdiction. *See, e.g., Berry v. WPS, Inc.* 2005 WL 1168412, at *2 (S.D. Tex. May 16, 2005) (holding, where contract stated that "jurisdiction shall lie exclusively in Houston, Harris County, Texas," that "the clause does *not* specify a particular court in Houston as the exclusive forum for litigation . . . [and] does not imply state rather than federal jurisdiction." (citation omitted)); *see also, e.g., Collin*

*County v. Siemens Bus. Servs., Inc.*, 250 Fed. Appx. 45, 52 (5th Cir. 2007) (holding that "in removal cases, the use of the term 'county' rather than 'district' at the very least falls short of a clear and unequivocal waiver of federal jurisdiction.").

Blanca Peak argues that the language in the Agreement is "extremely similar" to the contractual language in *ENSCO*, which the Fifth Circuit held "clear[ly] and unequivocal[ly]" waived the defendant's right to removal. *ENSCO Int'l, Inc.*, 579 F.3d at 448-49. The court disagrees. In *ENSCO International* the contract stated that "[a]ny disputes arising under or in connection with [the contract] shall be subject to the exclusive jurisdiction of the Courts *of* Dallas County, Texas." *Id.* at 443 (emphasis added). As the Fifth Circuit had earlier explained in *Dixon v. TSE International, Inc.* 330 F.3d 396, 398 (5th Cir. 2003), "[f]ederal district courts may be *in* Texas, but they are not *of* Texas." *See also Berry*, 2005 WL 1168412, at *2 (same). Thus the *ENSCO* contract's reference to the courts "of" Dallas County clearly referred to the Texas state courts sitting in Dallas County. By contrast, the Agreement at issue here does not refer to the courts "of" Dallas County; it provides that the forum for any disputes "is" Dallas County. *ENSCO* is thus distinguishable.

Nor is the court persuaded by Blanca Peak's reliance on *Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342 (10th Cir. 1992). First, *Milk 'N' More* is a decision of another circuit and is not binding on this court. Second, *Milk 'N' More* can be harmonized with Fifth Circuit precedent based on its facts.

In *Milk 'N' More* the contract stated that "venue shall be proper under this agreement in Johnson County, Kansas." *Id.* at 1343. This court can take judicial notice that there is no

federal district court that sits in Johnson County, Kansas. Under 28 U.S.C. § 96, the District of Kansas holds court "at Kansas City, Lawrence, Leavenworth, Salina, Topeka, Hutchinson, Wichita, Dodge City, and Fort Scott," none of which places for holding court is located in Johnson County, Kansas. In *Collin County*, 250 Fed. Appx. 45, the clause at issue provided that venue "shall lie exclusively in Collin County, Texas." *Id.* at 47. The panel addressed, in pertinent part, the district court's reliance on the fact that there was no federal district courthouse in Collin County to hold that this clause constituted a waiver of federal removal rights and for ordering remand. *Id.* at 52. The panel "agree[d] that, under the facts of this case, Collin County's lack of a federal courthouse renders the clause at issue such a waiver." *Id.* It concluded that it was "clear that the clause at issue in this case was intended to relate to where there is a sitting court." *Id.* Remand was proper because the clause provided that venue shall lie exclusively in Collin County, Texas, and no federal district court sat in Collin County at that time. The result of *Milk 'N' More* is therefore factually consistent with the result of *Collin County*, and the case would have been properly remanded under Fifth Circuit precedent.

Another Fifth Circuit case, *Alliance Health Group, LLC v. Bridging Health Options, LLC*, 553 F.3d 397 (5th Cir. 2008), supports upholding Big Star's right of removal. In *Alliance Health Group* the venue clause at issue provided: "Governing Law: This Agreement shall be governed by and construed in accordance with the laws of the state of Mississippi and exclusive venue for any litigation related hereto shall occur in Harrison County, Mississippi." *Id.* at 398 (emphasis omitted). After a dispute arose, one of the parties sued

- 13 -

in the Southern District of Mississippi. A federal courthouse is located in Harrison County. *Id.* The district court denied the defendant's motion to dismiss and certified its ruling for interlocutory appeal. *Id.* The Fifth Circuit affirmed. It distinguished two district court cases that had held that venue was appropriate only in state court, noting that in those cases there was no federal courthouse in the specified county. *Id.* at 399. It also addressed the Fifth Circuit's earlier, unpublished opinion in *Collin County*, to the same effect. *Id.* at 399-400. Then panel then reached the question not addressed in *Collin County*, explaining that

> the question is not whether venue is proper when a federal judicial district merely includes the county named in the forum-selection clause; rather, it is whether venue is proper when the district court is located in the specified county. . . . [T]he clause at hand, providing for venue in a specific county, permits venue in either federal or state court, because a federal courthouse is located in that county.

*Id.* at 400. Like the district court in *Alliance Health Group*, the Northern District of Texas *does* sit in the county specified in the forum-selection clause[7] (here, Dallas County, Texas, 28 U.S.C. § 124(a)(1)), and a federal courthouse is located in that county. Therefore, the forum-selection clause at issue, which provides that the forum for the litigation of any such dispute is Dallas County, Texas, permits this suit to proceed either in federal or state[8] court.

The court rejects each of Blanca Peak's bases for contending that Big Star "clearly

---

[7]"Although the clause at issue refers to venue, we have previously treated similar clauses as forum-selection clauses." *Alliance Health Grp.*, 553 F.3d at 399 (collecting cases).

[8]The court includes Dallas County county courts at law within the meaning of the term "state" court.

and equivocally" waived its right to remove this case to federal court. Accordingly, the court denies Blanca Peak's motion to remand on the ground that Big Star waived its right to remove this action to federal court.

* * *

Accordingly, for the reasons explained, the court denies Blanca Peak's motion to remand.

**SO ORDERED**.

March 24, 2020.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE